UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X

Letterio DeCarlo,

                              Petitioner,          CV-04-1438 (CPS)

    - against -                                    MEMORANDUM OPINION
                                                   AND ORDER

United States of America,

                              Respondent.

--------------------------------------X

SIFTON, Senior Judge.

On July 26, 2000, petitioner Letterio DeCarlo pled guilty to

murder in the second degree, in violation of 18 U.S.C. § 924(j),

and on May 16, 2001, I sentenced petitioner to 188 months

imprisonment.  Now before this Court is petitioner's (1)

application for relief,[1] pursuant to 28 U.S.C. § 2255, on the

grounds that (a) the government failed to disclose mitigating

evidence relevant to both the indictment and sentencing, in

violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and (b) he

was denied effective assistance of counsel;[2] (2) motion for

discovery, pursuant to Rule 6(a) of the Rules Governing § 2255

_____

        [1] Petitioner seeks to have his guilty plea vacated and the
charges dismissed or, in the alternative, resentencing.

        [2] As discussed in more detail below, petitioner alleges several
failures of counsel.  One of petitioner's allegations is that his attorney
failed to challenge the sentence after I allegedly revised it outside of
petitioner's presence.  However, while challenging his counsel's performance
on this sentencing issue, petitioner does not, in his present application for
relief, argue directly that this Court erred by allegedly revising the
sentence outside his presence.  He instead refers to the fact that he
previously alleged such an error in a pro-se appellate brief to the Second
Circuit (a copy of which has not been provided to this Court) requesting a
rehearing.  On November 4, 2002, the Second Circuit issued an Order denying
the petition for a rehearing.  November 4, 2002 Order, Docket 01-1342, Docket
Entry #9.

Proceedings;[3] (3) motion for an evidentiary hearing regarding his
§ 2255 claims; and (4) motion to appoint counsel.[4]  For the
reasons that follow petitioner's motions and petition are denied.

## Background

After indictment on three counts of violation of federal law
in relation to the killing of Frank Parasole, petitioner pleaded
guilty to murder in the second degree in violation of 18 U.S.C.
§ 924(j)(1) on July 26, 2000.  Pursuant to the plea agreement
with the government, the remaining counts of the indictment[5] were
dismissed and petitioner agreed not to challenge a two-point
upward 'leadership role' adjustment to his Sentencing Guidelines
calculation, pursuant to U.S.S.G. § 3B1.1(c).[6]

According to the pre-sentence report, in 1997 petitioner
recruited a number of construction workers to assault Parasole at

---

[3] The rule provides that a "judge may, for good cause, authorize a
party to conduct discovery . . . ." 28 U.S.C. foll. § 2255 Rule 6(a).  On
January 2, 2005, I denied petitioner's earlier motion for discovery without
prejudice, on the grounds that petitioner had offered nothing more than a
conclusory allegation that the government had withheld evidence and that such
evidence was hidden in government files.

[4] Petitioner has also filed what he terms a "motion to traverse"
to respond to issues raised in the government's opposition to his application
for habeas corpus.  In evaluating petitioner's claims, I have considered the
arguments petitioner raised in his "motion to traverse."  In addition,
petitioner filed a "motion to supplement/expand the record" with respect to
the testimony of Frank Fappiano, which I have considered as well.

[5] The other counts were (1) that petitioner committed a violent
crime to maintain and increase his position within the Gambino family, in
violation of 18 U.S.C. § 1959(a)(3) and (2) that petitioner knowingly and
intentionally used and carried a firearm during and in relation to a crime of
violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii).

[6] Petitioner did reserve the right to contest an enhancement for
obstruction of justice.

location referred to as Club Duvo. When Parasole arrived they beat him. John Ferrisi, one of petitioner's accomplices, handed petitioner a gun, and petitioner shot Parasole in the buttocks. Parasole died shortly thereafter. At sentencing, petitioner received a two-level upward leadership role adjustment. This enhancement was based on my finding that petitioner directed others to be present to assist him at the confrontation that led to Parasole's death.

The Court of Appeals affirmed petitioner's sentence and the Supreme Court denied a writ of certiorari on March 31, 2003. *See DeCarlo v. United States*, 538 U.S. 955 (2003). Petitioner timely filed his petition for habeas review on March 29, 2004.

## Discussion

Disclosure of *Brady* Material

*Undisclosed Audio Recordings*

Petitioner alleges that the government failed to turn over to the defense material required to be disclosed under *Brady v. Maryland*, 373 U.S. 83 (1963). According to petitioner, the government failed to disclose audio recordings of conversations from early 2000 between cooperating witness Charles Trentacosta and Frank Fappiano, the head of a Gambino family 'crew' to which petitioner belonged.[7] According to petitioner, these recordings demonstrate that Trentacosta was in fact the leader of the assault on Parasole and also that petitioner was not acting in

---

[7] The existence of these recordings came to light during a 2004 trial, *United States v. Vallario, et al.*, 02-CR-743 (RCC) (S.D.N.Y.), discussed below.

furtherance of Gambino family objectives but rather participated in the assault for personal reasons, in contravention of Gambino family rules.[8]  In relevant part, the recordings are as follows:[9]

TRENTACOSTA:  So listen . . . that fucking guy [Parasole].  I warned him, next time . . . you're gonna be in trouble.  You're going to the hospital.

FAPPIANO:  That's why I said . . .

TRENTACOSTA:  (VO) And you said, next time, Charlie do it . . .

FAPPIANO:  No, no, no.

TRENTACOSTA:  What then, then what did I do, misunderstood everything?

FAPPIANO:  What I said, was, I told Lenny[10] to wait.

TRENTACOSTA:  But who told fucking John to bring a fucking pistol?  Or who told him to fucking do it?

FAPPIANO:  I don't know, I wasn't here brother.  I don't know.

TRENTACOSTA:  It was over, the thing was fucking over.  I didn't think the scum bag would do something like that.  Listen, I don't care about that . . . listen to me.

FAPPIANO:  . . . we gotta deal with the situation here (UI) . . . death penalty.

TRENTACOSTA:  Why death penalty?

FAPPIANO:  Why?  Cause they were saying that he was tortured before he was killed.

TRENTACOSTA:  . . . slapped around, it was nothing.

FAPPIANO:  Oh yeah, ok well go tell it to the government.

TRENTACOSTA:  All we did was slapped around, it was nothing.

---

[8] Petitioner alleges that he was not a "made member" of the Gambino organization.

[9] The conversation took place on February 14, 2000, three days after petitioner's arrest.

[10]  Petitioner.

```
FAPPIANO:      Go tell it to the government . . . charge with a
               weapon, assault, and . . . gun charge in 924C.
               It's a minimum mandatory . . . without any torture.
               (UI) it's a 924J (UI) . . . torture . . .

TRENTACOSTA:   Torture, what torture.  That wasn't torture.  The
               guy was up, it was over.

FAPPIANO:      (UI)

TRENTACOSTA:   The guy was fucking up.  The guy had nothing.  I
               (UI) my whole fucking life, I caught. It was
               nothing.  The guy was over with.

FAPPIANO:      Well.

TRENTACOSTA:   Listen to me.  I was in the fucking next room.  My
               back was turned on this fucking thing.  I didn't
               even know what the fuck happened here.

FAPPIANO:      That's not the way they're getting it.  (UI) that's
               not the way they're getting it.

                         . . . .

FAPPIANO:      (UI)

TRENTACOSTA:   You told me to give him a beating, put him in the
               hospital.
```

(Petitioner's Ex. A 12-13, 15).

During the 2004 trial of *U.S. v. Vallario*, Fappiano gave testimony about the assault on Parasole and its context. According to Fappiano, petitioner informed Fappiano that Parasole was "shaking down some of the contractors on the job, he was putting people to work there, that were nonunion, taking $25 a week out of their salary. [Petitioner] said that [Parasole] was using [Fappiano's] name to do this."  Fappiano testified further that petitioner, who worked for Parasole, also had "a personal problem with [Parasole], the way Frank was treating him on the

job."[11]  As a result, Fappiano testified, petitioner "wanted to

abuse [Parasole], get on his case."  Because of these

conversations with petitioner, Fappiano discussed the possibility

of beating up Parasole with members of his crew,[12] but did not

specifically authorize the assault.  He further testified that he

yelled at Trentacosta when he returned from a trip and was told

of the incident,[13] at which point Trentacosta said "I figured you

were away, we talked about it a few times with this guy, he was a

problem, Lenny had a few problems, you knew he [Parasole] was

using your name, I figured you were away, we could just take care

of it."  According to Fappiano's testimony, Trentacosta also said

that "Lenny got hold of [Trentacosta], told him he had a problem

with Frank Parasole, we should take care of this while the other

guy is away, meaning [Fappiano], I was on a hunting trip."

Fappiano then testified that his position within the Gambino

crime family diminished as a result of the assault.  In

Fappiano's words, the Gambino family put him "on the shelf,"

---

[11] According to the testimony, petitioner was upset that Parasole
was making him work "in the hole, had him pump out water in the pits, making
him chop down walls, working him hard." (Petitioner's Ex. B 22).

[12]  According to Fappiano, after petitioner complained on
multiple occasions, "I finally got hold of Charlie Trentacosta, I told Charlie
talk to [Parasole], he was one of the guys I didn't want to meet with.  I let
Charlie meet with him.  I told him tell Frank I am not involved no more, stop
using my name, work this thing out with this kid Lenny, leave my name out of
shaking out those companies.  It happened 2, 3 more times after that.  Lenny
came to me again, he wanted to hurt him.  I said tomorrow, if it happens
again, I will speak to him myself, if we have to hurt this guy, we will hurt
him." (Petitioner's Ex. B 22).

[13] Upon returning from his trip, Fappiano was told by Trentacosta
that "him and a couple of people went to a club, they called Frank Parasole to
the club, they gave him a beating, and somebody shot him in the ass."
(Petitioner's Ex. B 14)

meaning he could not conduct new Gambino family business.
(Petitioner's Ex. B 13-14, 22-23, 26).[14]

*Brady Standards*

The Supreme Court has recognized that "the suppression by
the prosecution of evidence favorable to an accused upon request
violates due process where the evidence is material either to
guilt or to punishment." *Brady*, 373 U.S. at 83. For a *Brady*
violation to occur, the suppressed evidence must be both
favorable and material. *See United States v. Gil,* 297 F.3d 93,
101 (2d Cir. 2002). "[E]vidence is favorable to the accused if
it either tends to show that the accused is not guilty or if it
impeaches a government witness." *Id.* Evidence is 'material'
where there is "a reasonable probability that, had the evidence
been disclosed to the defense, the result of the proceeding would
have been different." *United States v. Bagley*, 473 U.S. 667, 682
(1985); *see also United States v. Coppa,* 267 F.3d 132, 135 (2d
Cir. 2001) ("In the context of *Brady*, a defendant is deprived of
a fair trial only where there is a reasonable probability that
the government's suppression affected the outcome of the case . .
. or where the suppressed evidence could reasonably be taken to
put the whole case in such a different light as to undermine

_____

[14] In January 2006, petitioner filed a "motion to
supplement/expand the record" in which he cited further testimony of Fappiano
from the 2005 trial of John Gotti, Jr. In that testimony, Fappiano repeated
his earlier testimony that petitioner had personal reasons for assaulting
Parasole, and that petitioner assaulted Parasole as a result of those personal
problems without any specific direction or order from Fappiano.

confidence in the verdict.") (internal citations and quotations omitted).

> In the context of an attack on the validity of a plea, evidence is considered material where there is a reasonable probability that but for the failure to produce such information the defendant would not have entered the plea but instead would have insisted on going to trial. Assessment of that question involves an objective inquiry that asks not what a particular defendant would do but rather what is the likely persuasiveness of the withheld information.

*United States v. Avellino*, 136 F.3d 249, 256 (2d Cir. 1998) (internal citations and quotations omitted).

*Petitioner's Claims*

According to petitioner, the relevant portions of the conversations between Trentacosta and Fappiano were favorable and material since they reveal that Trentacosta, rather than petitioner, was the leader of the assault. Petitioner therefore contends that, had the tapes been disclosed, it would have been clear that he was not eligible for the leadership role enhancement. Specifically, petitioner argues that had the tapes been disclosed, his counsel would have contested the leadership enhancement and caused it to be stricken from the plea agreement or at least reserved the right to contest it at sentencing.[15] Elsewhere in petitioner's filings, he states that had he been aware of the recordings, he would not have agreed to plead guilty but would instead have proceeded to trial.

---

[15] If not for the application of the leadership enhancement, the Guidelines calculation would have resulted in a maximum penalty of 151 months.

However, the relevant portions of the recorded conversations are not 'favorable' to petitioner with regards to his leadership role.  While the February 14, 2000, conversation does indicate that Fappiano and Trentacosta had discussed assaulting Parasole and that Trentacosta took a substantial role in organizing the beating, it does not exonerate petitioner or otherwise indicate that he did not also take a leadership role.  "There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy." U.S.S.G. § 3B1.1 application note 4; see *United States v. Huerta*, 371 F.3d 88, 92 (2d Cir. 2004) ("[t]he fact that others in the conspiracy also played leadership or managerial roles is 'not dispositive' of whether [defendant] played such a role").  Nor is a comparative analysis of the levels of involvement of various co-conspirators relevant to whether a leadership role enhancement is appropriate for a particular defendant. *See United States v. Duncan*, 42 F.3d 97, 106 n.6 (2d Cir. 1994).  All that is required is that the defendant played a significant role in the decision to recruit or supervise others.  *See United States v. Garcia*, 413 F.3d 201, 223 (2d Cir. 2005) (affirming leadership role enhancement for two defendants and noting that defendant must only supervise a single other participant to be eligible for the enhancement).  The fact that the recording reveals that Trentacosta was also involved in the planning and decision to perform the assault fails to demonstrate that petitioner did not also direct others to attend the meeting which led to the

assault; none of the statements in the recording cast doubt on the finding that petitioner recruited others in furtherance of the offense.[16]  Accordingly, the recordings are not 'favorable' to a determination of petitioner's leadership role.  Accordingly, there is no *Brady* violation.

Petitioner also argues that the conversations establish that he was innocent of the federal charges and that they would have supported dismissal of the indictment against him with prejudice. He further contends that he would not have entered into the plea agreement had the conversations been disclosed but would instead have insisted on going to trial.  Read most favorably,[17] petitioner is apparently referring to the fact that charges under § 924(j), to which he pleaded guilty, require an underlying "crime of violence."[18]  In this case the "crime of violence" was the § 1959 violation charged in the first count of the indictment, alleging that petitioner committed a violent crime to maintain and increase his position within the Gambino family.[19]

---

[16] This fact is further supported by Fappiano's later testimony, discussed above, in which Fappiano stated that Trentacosta said that petitioner contacted Trentacosta to convince him to perform the assault on Parasole while Fappiano was away.  Further, the recording indicates that some other individual or individuals, not Trentacosta, made the decision to bring the gun and shoot Parasole.

[17]  To the extent petitioner is arguing that the recorded conversations indicate that he was innocent of the § 924(j) charge to which he pleaded guilty, these conversations contain nothing to alter the conclusion that petitioner participated in the assault and fired the gun, nor does petitioner indicate how these conversations would lead to such a conclusion.

[18] See 18 U.S.C. §§ 924(c)(1) and (j).

[19] Violations of § 1959 require that the defendant commit his crime

(continued...)

According to petitioner, the recorded conversations reveal that he assaulted Parasole for solely personal reasons and, in fact, was acting contrary to instructions from the Gambino organization.  However, the information contained in the recording is not 'favorable' as it does not indicate that petitioner was not guilty of the § 1959 violation; the fact that Fappiano said that he "told Lenny to wait" and that petitioner apparently did not check with Trentacosta before shooting Parasole is at most evidence that he acted beyond the scope of his orders, not that he had no interest in furthering a Gambino family objective.[20]  Further, the evidence is not sufficiently 'material' to attack the validity of the plea.  Viewed objectively, the references to petitioner's acting outside of his orders is insufficient to have persuaded him that he would be able to successfully contest the § 1959 charge such that it would be worth proceeding to trial on all three counts and risking a longer sentence, much less obtain dismissal of the indictment; even with the recordings, at the time of his guilty plea, neither

---

[19](...continued)
as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity. . .

18 U.S.C. § 1959(a).

[20] It is only the later testimony of Fappiano which indicates that petitioner may have had solely personal reasons for his actions.  For this reason, petitioner's citation to *United States v. Bruno*, 383 F.3d 65 (2d Cir. 2004) is inapposite.  Moreover, petitioner allocuted during his plea that he caused Parasole to come to the club "[a]s part of my participation in an enterprise in fact. . ."  Transcript of July 26, 2000 plea at 34.

petitioner nor the prosecution had any reason to expect Fappiano to testify that petitioner was *solely* motivated by personal considerations.

<u>Ineffective Assistance of Counsel</u>

Petitioner makes five claims of ineffective assistance of counsel.  Petitioner asserts that his counsel failed: 1) to challenge the factual basis of the offense; 2) to challenge the leadership role enhancement; 3) to seek resentencing after the court allegedly revised the sentence outside the presence of the petitioner; 4) to scrutinize the record adequately and notice this error in preparing the direct appeal; and 5) "to protect society's legitimate interest in observing the function of the judicial system during proceedings that involved the removal of the liberties of one of its citizens."

Under the test set out in *Strickland v. Washington*, 466 U.S. 668 (1984), to prevail on a claim of ineffective assistance counsel in the context of guilty pleas, petitioner must demonstrate both that his counsel's performance (1) "fell below an objective standard of reasonableness," *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985), and (2) "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59; *see also United States v. Couto*, 311 F.3d 179, 187 (2d. Cir. 2002) (discussing the *Strickland* standard in the context of guilty pleas).

*Claims Regarding the Audio Recordings* (*Claims 1 and 2*)

DeCarlo argues that his counsel was deficient in failing to challenge the factual basis of his offense and the leadership role enhancement due to the government's failure to disclose the conversations between Fappiano and Trentacosta. This claim is misplaced. Petitioner's counsel could hardly be expected to challenge the factual basis of the offense and the application of the leadership role enhancement based on information that the petitioner admits his attorney did not have.

In addition, for the reasons set forth in the *Brady* section, *supra*, the testimony does not exculpate petitioner or establish that petitioner had anything less than a leadership role in the attack.

*Resentencing* (*Claim 3*)

I sentenced petitioner on May 16, 2001, in petitioner's presence. Primarily at issue at the hearing was whether a two-level sentencing enhancement was appropriate for obstruction of justice based on petitioner's efforts to dispose of the murder weapon, clean the crime scene, and discourage witnesses from speaking to the police. At the conclusion of argument, I ruled that the obstruction of justice and leadership enhancements were appropriate. I concluded by pronouncing a sentence of 188 months.

The written judgment and commitment was filed on June 20, 2001. The "statement of reasons" in the written commitment adopted the factual findings and guideline application in the

pre-sentence report, except that the two-level enhancement for obstruction of justice was not applied. The written commitment stated that petitioner was sentenced to the same 188 month term announced in his presence at sentencing.

Assuming that petitioner is correct that the written judgment and commitment and the oral judgment are in conflict, even though the terms of incarceration are identical, the written judgment of conviction did not constitute a resentencing if only because it is the oral judgment of the court that controls. *United States v. Marquez*, 506 F.2d 620 (2d Cir. 1974). "It is the oral sentence which constitutes the judgment of the court, and which is authority for execution of the court's sentence. The written commitment is 'mere evidence of that authority.'" *United States v. DeMartino,* 112 F.3d 75, 79 (2d Cir. 1997) (quoting *Marquez,* 506 F.3d at 622). The reason for this rule is to avoid the precise issue raised by petitioner. If the written commitment controlled in a conflict situation, then the sentence would be invalid since the defendant would not be present. *Marquez*, 506 F.3d at 622. The Court of Appeals has concluded that:

> in cases where there is a direct conflict between an unambiguous oral pronouncement of sentence and the written judgment and commitment, this Court has uniformly held that the oral pronouncement, as correctly reported, must control. The only sentence that is legally cognizable is the actual oral pronouncement in the presence of the defendant.

*Id.* (quoting *United States v. Munoz-Dela Rose*, 495 F.2d 253, 256 (9th Cir. 1974)). Accordingly, petitioner was not resentenced outside his presence.

A claim of ineffective assistance of counsel at the sentencing stage is evaluated under the *Strickland* standard, discussed above. *See United States v. Morris*, 350 F.3d 32, 39 (2d Cir. 2003). Petitioner claims his counsel was ineffective because he failed to seek resentencing after the Court improperly revised petitioner's sentence outside of his presence through the written commitment, which did not apply the obstruction of justice enhancement. For the reasons stated above, however, petitioner was not resentenced outside of his presence. Moreover, the oral ruling stated that the sentence imposed would be the same with or without the obstruction of justice enhancement.[21] Petitioner's counsel was therefore not deficient in failing to seek resentencing, nor was petitioner prejudiced.

*Appeal (Claim 4)*

Petitioner argues that his counsel failed to adequately scrutinize the record and notice the alleged sentencing error in preparing the direct appeal. Petitioner's counsel accordingly

---

[21] I ruled that even if the obstruction of justice enhancement was not warranted by the law:

> I would have to take the circumstances of the cold-blooded act of involving other people in DeCarlo's wrongdoing by telling them not to talk and cold-bloodedly taking steps to avoid apprehension under circumstances not otherwise taken into account in the calculation of the offense level. So the sentence I impose would be the same whether it was imposed with or without the obstruction of justice enhancement.

did not raise this alleged error on appeal.  For the reasons
stated above with respect to petitioner's third claim of
ineffective assistance of counsel, just as petitioner's counsel
was not deficient in failing to seek resentencing, nor was he
deficient in failing to raise this issue on appeal.  Further, as
also noted above, I would have imposed the same sentence whether
or not I applied the obstruction of justice enhancement, so
petitioner has not been prejudiced.  *See Mosby v. Senkowski*, 470
F.3d 515 (2d Cir. 2006) (applying *Strickland* standard to claim of
ineffective assistance of appellate counsel).

*Failure to Protect Society's Legitimate Interest in Open Court*
*Proceedings (Claim 5)*

     Petitioner is correct that there is a strong social interest
in openness in court proceedings since such openness "may improve
the quality of testimony, induce unknown witnesses to come
forward with relevant testimony, cause all trial participants to
perform their duties more conscientiously, and generally give the
public an opportunity to observe the judicial system." *Huminski*
*v. Corsones,* 396 F.3d 53, 81 (2d Cir. 2005) (citing *Gannett Co.*
*v. Pasquale*, 443 U.S. 368, 383 (1979)).  "To work effectively, it
is important that society's [judicial] process satisfy the
appearance of justice, and the appearance of justice can best be
provided by allowing people to observe it." *Id.* (citing *Richmond*
*Newspapers, Inc. v. Virginia*, 448 U.S. 555, 571-2 (1980)).

     Petitioner's claim that his lawyer failed to protect this
interest is premised on his contention that I resentenced him

outside of his presence and not in open court. As I determined above, the written commitment did not revise petitioner's sentence, which was entered in open court. Consequently, society's right to openness in court proceedings was not infringed upon and petitioner's counsel therefore was not deficient in protecting this interest.

## Motion for Discovery

Petitioner moves for discovery pursuant to Rule 6(a) of the Rules Governing § 2255 Proceedings. A habeas petitioner, unlike an ordinary civil litigant, is not entitled to discovery as a matter of course. *Stantini v. United States*, 268 F. Supp.2d 168, 174 (E.D.N.Y. 2003). Rule 6(a) permits discovery "for good cause shown." A showing of "good cause" requires specific allegations that, if the facts were fully developed, give the court reason to believe the petitioner may be able to demonstrate that he is entitled to relief. *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) (interpreting rules governing § 2254 proceedings). The Supreme Court has described this requirement as a "factual showing." *Id.* at 901. Mere speculation is insufficient. *Bisaccia v. United States*, 97 CV 6683, 2000 WL 703014, at *5 (E.D.N.Y. April 12, 2000).

Petitioner contends that the recorded conversations between Fappiano and Trentacosta reveal that the Government was in possession of evidence that Trentacosta was the leader of the assault on Parasole, not petitioner. He requests the following items of discovery: (1) "transcripts of grand jury hearings or

any other investigative disclosures" relating to the assault on Frank Parasole; (2) "notes of witness/confidential informant interviews"; (3) "FBI 302 forms"; (4) wiretap transcripts; and (5) "any other form(s) of relevant government work product." As discussed above, however, the fact that the recording reveals that Trentacosta was also involved in the planning and decision to perform the assault fails to demonstrate that petitioner did not also direct others to attend the meeting which led to the assault and none of the statements in the recording cast any doubt on the finding that petitioner recruited others in furtherance of the offense. Thus, petitioner has not shown his allegations, if developed, would entitle him to relief and his motion for discovery is denied.

Motion for Evidentiary Hearing

Petitioner also moves for an evidentiary hearing under Rule 8 of the Rules Governing Section 2255 Proceedings, which requires the Court to determine whether to hold such a hearing. "[U]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall ... grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255. In *Chang v. United States*, 250 F.3d 79, 85-86 (2d Cir. 2001), the Second Circuit made it clear that it is within a district court's discretion to determine whether an evidentiary hearing is warranted. Although indicating a preference that a district court not summarily dismiss a habeas

petition on its face unless it is "clearly bereft of merit," the
Second Circuit noted that an evidentiary hearing is not needed in
every case. *Id.* In order to obtain a hearing, a petitioner must
"demonstrate a colorable claim," and the court must evaluate
whether a hearing would "offer any reasonable chance of altering
its view of the facts." *Id.* at 84, 86. Second Circuit precedent
". . .permits a 'middle road' of deciding disputed facts on the
basis of written submissions." *Pham v. United States*, 317 F.3d
178, 184 (2d Cir. 2003).

There is no need for an evidentiary hearing in this case.
The Trentacosta and Fappiano conversations upon which petitioner
bases his *Brady* claims and certain of his ineffective assistance
of counsel claims are annexed as exhibits to petitioner's habeas
application. I have considered the additional material that
petitioner submitted in his "motion to traverse," and his "motion
to supplement/expand the record." *See* footnote 4, *supra*.[22] I
also have before me the transcript of petitioner's sentencing and
the written judgment that form the basis for petitioner's three
remaining ineffective assistance of counsel claims. The record
in this case is sufficient to resolve the factual issues
presented in petitioner's application. Thus, petitioner's motion
for an evidentiary hearing in connection with his § 2255 habeas
application is denied.

---

[22] In considering this material, I necessarily grant petitioner's
motion for leave to file the traverse (Docket # 16) and petitioner's "motion
to supplement/expand the record" (Docket # 23).

Motion for Appointment of Counsel

Petitioner argues two grounds in support of his motion that counsel should be appointed to assist him in this matter.

As to petitioner's first ground, he is correct that a court may appoint counsel for a habeas petitioner under the Criminal Justice Act when "the interests of justice so require." 18 U.S.C. 3006A(a)(2)(B). In deciding applications of this type, courts in this circuit typically consider the same factors as those applicable to requests for pro bono counsel made by civil litigants. *E.g., Zimmerman v. Burge*, 492 F. Supp.2d 170, 176 n. 1 (E.D.N.Y. 2007) (citing *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2d Cir. 1989)); *Moultrie v. Marshall*, 2007 WL 2608840, at *1 (S.D.N.Y. Sept. 6, 2007); *Vargo v. United States*, 2007 WL 2366331, at *1 (E.D.N.Y. Aug. 16, 2007) (habeas corpus petition under 18 U.S.C. § 2255). The factors include "the petitioner's likelihood of success on the merits, the complexity of the legal issues raised by the petition, and the petitioner's ability to investigate and present the case." *Gonzalez v. People*, 2006 WL 728482, at *1 (S.D.N.Y. Mar. 21, 2006) (citations omitted). Of these, the first is paramount. *See Cooper v. A. Sargenti Co.*, 877 F.2d at 172. I find the legal issues are not terribly complex and, for the reasons set forth above, not meritorious. Thus, I deny petitioner's request for counsel on this ground.

Petitioner also correctly argues that I must appoint counsel if I decide to hold an evidentiary hearing. 28 U.S.C. foll. § 2255, Rule 8(c). As I have denied petitioner's motion for an

evidentiary hearing, I accordingly deny his motion for appointment of counsel to assist in that hearing as moot.

## Conclusion

For the reasons set forth above petitioner's (1) § 2255 habeas petition is denied; (2) motion for discovery is denied; (3) motion for an evidentiary hearing is denied; and (4) motion to appoint counsel is denied. The Clerk is directed to transmit a copy of the within to all parties and the assigned Magistrate Judge.

Petitioner is denied a certificate of appealability because he has not made "a substantial showing of the denial of a constitutional right," *Reyes v. Keane*, 90 F.3d 676, 680 (2d Cir. 1996).

SO ORDERED.

Dated : Brooklyn, New York
        January 14, 2008

            By:  <u>/s/ Charles P. Sifton (electronically signed)</u>
                United States District Judge